32686.   RYMER *v.* FIDELITY & GUARANTY FIRE CORPORATION.

MacINTYRE, P. J.   1. Where in an action upon a policy of insurance for the loss of an automobile, the insurer defends upon the ground that the plaintiff had no insurable interest in the automobile because the car which he sought to insure under the policy had been stolen from a named person; and, where upon the trial, in seeking to establish this defense, the insurer placed on the stand the confessed thief of the automobile of the named person, who testified that after he had stolen the automobile of the named person, he enlisted the aid of two confederates in disposing of the car and they together took the car to a certain house and sold it to a man to him unknown, but that the confederates said it was the plaintiff's house, and the confederates were not present at the trial and did not testify that the car was taken to the plaintiff's house, the testimony of the thief that the car was taken to the house of the plaintiff was hearsay pure and simple, and its admission in evidence was harmful to the plaintiff in that it permitted the jury to infer that the automobile which the plaintiff sought to insure was the stolen car to which he could have obtained no title or insurable interest whereas the jury might not have done so with this evidence excluded.   Even if the confederates were not available to testify that the house in question was the house of the plaintiff, the defendant insurer could have identified the house to which the stolen car was taken as that of the plaintiff, if such it was, by having the thief point out the house to which the car was taken to some person who could identify the house as that of the plaintiff, if such it was, and coordinate the testimony of the two by placing such other person on the stand; or perhaps the house could have been properly identified in other ways.

2. A witness for the defendant insurance company testified as follows: "I am employed at Ford Motor Company, Dearborn, Michigan, in the capacity of resident comptroller of the Dearborn District Office.   Yes, as such I have charge of the records of certain motors.   These records are kept in the usual course of business.   I have supervision of the records covering automobiles assembled in the final assembly plant, Rouge Plant, Dearborn, Michigan.   These records support our account-

ing records. No two motors manufactured by the Ford Motor Company have the same number. Yes, I have a record on motor No. 99A-1271555. I have that record before me. It indicates that that motor No. 99A-1271555 was assembled into a Mercury Fordor Town Sedan, broadcloth upholstery, gray color, with four 6.50 x 15 4-ply Firestone tires, hat type oil bath air cleaner, oil filter and wheel rings. This unit was covered by our invoice No. 271390 on November 20, 1946, to Lawrence Brothers Motor Company, Chattanooga, Tennessee, as item 68, ordered through our Atlanta, Georgia, branch. It was floor planned through the Pioneer Bank, Chattanooga, Tennessee. Yes, I have checked the records of the Ford Motor Company on motor No. 99A-1211555, and the records of the Ford Motor Company indicate that motor No. 99A-1211555 was shipped to our Long Beach, California, assembly plant for installation into a unit at that location. Yes, I waive my signature of this deposition." This testimony was objected to on the ground that "from his answer it appears he is testifying from a record. The record would be the highest and best evidence of its contents." In Underhills's Criminal Evidence (4th ed.), p. 141, § 108, it is stated: "These conclusions [of an expert witness], net results, summaries or opinions, are admissible only if the books themselves are in court and available to the parties, where they were put in evidence and kept accessible, and where they are accessible, though not put in evidence. In such cases, it should be remarked, the witness is not required to prove the contents of the writing. He is merely asked to give primary evidence of a fact within his personal knowledge, which he has acquired through the employment of his own powers of observation. . . The jury are entitled . . to have all the light possible that can be thrown upon documentary evidence. From its nature and often from its great length, such evidence is hard to be comprehended by persons of the highest intelligence and trained in the investigation of the facts. Jurors are likely, in the hurry and confusion which so frequently attend . . trials, to overlook the most important portions of the books of account, certified copies of legal proceedings, deeds, letters and other written proof which are placed before them. The report of one who has examined the written evidence either as to a single fact which he has or has not found or as to a general result, derived from his investigation, is of great evidential value and is properly received where the written evidence which is or has been inspected by the witness is before the jury." In *Cabaniss* v. *State*, 8 *Ga. App.* 129 (14) (68 S. E. 849), it was ruled: "Where facts can be ascertained only by an examination of a large number of details on books of account, it is permissible for an expert accountant, who has made an examination of the books and figures, to testify as a witness and to give a summarized statement of what the books show, provided the books themselves are made accessible to the court and to the parties." See also *Bitting* v. *State*, 165 *Ga.* 55 (3) (139 S. E. 877); *Bible* v. *Somers Construction Co.*, 197 *Ga.* 761 (2) (30 S. E. 2d, 623). Upon application of the above-stated principles of law the court did not err in overruling the objection.

*Judgment reversed. Gardner and Townsend, JJ., concur.*

DECIDED MARCH 16, 1950. REHEARING DENIED APRIL 1, 1950.

*Mitchell, Mitchell, Bolling & Mitchell,* for plaintiff.
*Hardin & McCamy,* for defendants.