## 23835. KENNEMORE v. THE STATE.

ARGUED DECEMBER 13, 1966—DECIDED JANUARY 5, 1967—
REHEARING DENIED JANUARY 19, 1967.

*Reed & Dunn, Robert J. Reed, Hester & Hester, Frank B. Hester,* for appellant.

*Floyd G. Hoard, Solicitor General, Davis & Davidson, Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Carter A. Setliff, Assistant Attorney General,* for appellee.

MOBLEY, Justice. Richard Kennemore was indicted, tried, and convicted of the murder of Donald Marlowe with recommendation of mercy and sentenced to life imprisonment. He appealed therefrom and enumerates eight errors.

■ The first seven errors alleged are that the evidence was insufficient to support the verdict, and that the trial court erred in not directing a verdict of acquittal and in denying the defendant's motion for judgment of acquittal notwithstanding the verdict.

We have carefully reviewed the evidence, which is entirely circumstantial, and will briefly recount that which is material. Donald Marlowe was found lying on the ground near his overturned 1963 white Corvair automobile just off the right side of U. S. Highway 129 in Jackson County at about 11 p.m. on February 27, 1965. His car was resting on its top and the wheels were still turning when the first witness arrived on the scene. He was still breathing but was dead a short time later when he arrived at the hospital in Gainesville. The doctor upon examining him found that he had a shotgun wound in the lower part of his left rib cage. It was his opinion that he had been shot at close range within two feet, and died from the shotgun wound within five minutes. Most of the bleeding

was internal. It was not discovered that he had been shot until his body was examined at the hospital.

Shotgun pellets and wadding were dug out of the wound, which were identified as having come from a twelve-gauge shotgun. The Corvair had a large hole just to the rear of the door on the left side, which penetrated the outside shell of the automobile but not the inside, and around the hole were slight indentations, and pellets from a twelve-gauge shotgun were found behind the panel of the door. The top of the Corvair was caved in, and the left rear panel and left rear bumper were damaged; and there was white paint on the left rear bumper. The left rear tail light lens was broken. State Patrolman Angel, who arrived at the scene of the accident about an hour after it occurred, testified that the Corvair was white but was in the process of repair and had some gray primer paint and some maroon or red color on it in places. He described skid marks on the pavement, torn turf on the side of the road, debris, broken glass, and a small blood stain, and the damaged Corvair. From a break in the skid marks and other physical facts it was his opinion, based upon his vast experience in investigating automobile wrecks, that the Corvair had been struck from the rear on the left side by another vehicle and that the car was traveling in excess of seventy miles per hour. His opinion was that Marlowe was either thrown out of the car or crawled out after it turned over. The left rear window of the car was broken out and was large enough for a person to crawl through.

There was evidence that there had been ill feeling between the deceased and the defendant, Richard Kennemore, for two or three years; that the deceased had been taking defendant's wife out, had taken her to Florida on one occasion, and two days before the deceased was killed she and the defendant had been to a lawyer to discuss divorce proceedings and a trial separation was agreed upon. It appeared that the defendant had not been at home with her either night since. Two witnesses testified that within three of four weeks or more before February 27th, the defendant rode by the filling station where Marlowe was working and "hollered" to him: "I'm going to

kill you, you God damn son of a bitch." And, Marlowe told Larry Smith on Friday before he was killed on Saturday that defendant had called him that day and threatened to kill him.

Charles Hendrixson testified that around noon on February 27, 1965, defendant borrowed a Pontiac from him, but brought it back in a few minutes saying it wasn't much automobile. He then let him have a Volkswagen, which he brought back Monday afternoon. It had a bad headlight.

John Howard Keesler testified that his wife was the aunt of defendant, and of William Kennemore and Lawrence Kennemore; that Richard Kennemore came by his house about 7 or 7:30 p.m. on February 27, 1965, and was driving his white Corvair and stayed about thirty minutes; that William Kennemore came by about thirty minutes after Richard Kennemore left, and William left driving Keesler's white Valiant; that he said he had a date, and that the Volkswagen just had one light, so he loaned him his Valiant. William came in a little after 11 that night. The next morning, Keesler drove the Valiant to his father's house, and left it there, and drove away from there in a '52 Plymouth. The Valiant was left at the edge of the driveway at the rear of the lot. When the officer came to look at it he noticed it was damaged on the right front, and said that he hit the Valiant with the Plymouth—which was after William had returned it. It was not damaged when loaned to William. He testified that when he hit the Valiant it bent the bumper and the fender and broke the headlight on the right front of it.

Henry Smith testified that Evelyn, Kennemore's mother, lives one and 1/2 blocks from him in Gainesville, and about 9 p.m. on February 27th, 1965, he saw a car parked in front of his house; that he went out to see who it was and found Richard Kennemore in the car, a white Valiant, and there was someone with him whom he didn't know; that Richard told him he was watching his mother-in-law's house for his wife who was there; that he stayed out there four or five minutes and returned to the house.

Larry Smith testified that Don Marlowe was at the filling station which he operates until 10:30-10:40 p.m. on February

27, 1965, when he left in his white Corvair and he had Tony Porter with him, whom he was to take home. He also testified that there was a lot of tension between Richard and Don during the thirty days before Donald was killed; and that for more than two years they had been having trouble; on one occasion Donald had beaten up Richard and on another occasion Richard had shot up Donald's car and had put a cocked pistol to his temple.

Tony Porter said Don Marlowe took him home from the filling station on the night of February 27 about 10:40, that they were followed by a car at a good distance.

Donald Stewart testified that he went to Jefferson on Saturday night, February 27, 1965, and left Jefferson about 11 p.m. and was on his way back to Gainesville traveling on U. S. 129, and as he approached where Holly Spring Road enters the highway, two cars came out of Holly Spring Road at a high speed, "really driving," careless and reckless. The first car that pulled out was a light colored car, with some primer paint on it. He didn't know what kind the second car was but it had two men in it. He didn't see the person in the first car. It was about 11:30. He knew the first car was a small one but was not sure about the second.

Ed Hudson who was driving the car Donald Stewart was riding in testified that the car that pulled out in front of him was a white Corvair; and he thought the second one was a '65 Ford; that the way they pulled out made him think it was a police car chasing the front car.

W. T. Underwood testified that he was at home and around 11 p.m. heard cars coming down the road going pretty fast and he thought it might be his boy and he went out to see but it wasn't; that they were small cars going down the road bumper to bumper.

Mrs. Dewitt Patton testified that she lived about fifty feet from the highway and on February 27, 1965, she was at home when the wreck occurred. As to what occurred just before and after the wreck, she testified: "I heard tires squealing and then, you know, then banging real loud—banging real loud like a car turning over or something, and then after that settled

down I heard something that sounded like a shot . . . Like a shot from a gun . . . I didn't go down there. It was about 11 p.m."

Hoke Elrod testified that he was at his father's house, which was 100 to 120 yards from where the wreck occurred; that he heard tires squealing, then a racket like a car turning over and heard the crash. After the crash he heard a car leave at a good speed. The wreck was thirty yards from his father's driveway.

Carlton Lester testified that he, his wife, and another couple on the night of February 27 came upon this accident, and that as he came around this curve he saw this car pull away going north; that he didn't recognize the kind of car that pulled away—it had medium tail lights.

John Crunkelton, a DeKalb County detective, testified that he and other officers went to the residence of Lawrence Kennemore in DeKalb County on March 8, 1965, with a search warrant. They found a twelve-gauge shotgun barrel driven into and buried in the ground. The barrel was bent and had white paint on it right in the bend of the barrel.

Paul C. Serene, a microanalyst with the Georgia Crime Laboratory, testified that he inspected the Valiant, Plymouth, and Corvair automobiles and the gun barrel heretofore described. Paint samples were taken by him from the area under the right front fender of the Valiant, which had been bent in toward the tire and pulled out, and he took paint samples from the gun barrel and found the two paints identical. The fender appeared to him to have been lifted off the tire by some tubular object, which in his opinion could have been the gun barrel. The paint from the Plymouth was not the same as from either the Corvair or Valiant and it was his opinion that the Plymouth had not come in contact with either the Corvair or Valiant.

Evidence offered by the defendant is as follows: Otis Helton testified that his wife was the aunt of William, Richard, and Lawrence Kennemore; that Richard came to his house about 8:30 on Friday night, February 26, 1965, and spent the night, and said he and his wife were having trouble and that she ran him away from home; that he came back on Saturday night, February 27, 1965, about 9:30 and spent the night there.

Mrs. Otis Helton, Richard's aunt, testified that Richard came to her house about 7:30 on Friday night, February 26, 1965, and said he and Evelyn (his wife) were separated and asked if he could spend the night, which he did; that he came back about 9:30 the next night and spent that night with them, going to bed about 11:30. That about 4:30 a.m. Evelyn called and talked over the phone with Richard, and Richard told the witness that Evelyn said someone had killed Marlowe, and "I said, yes, they will blame you with it because I have heard you say you wished he was dead."

The defendant made an unsworn statement in which he denied killing Marlowe, and said that he spent Saturday night at his aunt's, Mrs. Helton's house, arriving there about 9:30, went to bed about 11 or 11:30 and was called to the telephone during the night by his wife and Bob Reed, his attorney, and was told that he was being accused of killing Marlowe. The sheriff, Reed, and others came to the house after the phone call and he talked with them. He said that he did not know who killed Marlowe and that "I'm not guilty of this crime."

The jury was authorized to conclude from the evidence that strong ill feelings had existed between Don Marlowe and Richard Kennemore for more than two years prior to February 27, 1965, and particularly so during the last thirty days, caused by attention paid Kennemore's wife by Marlowe; that they had engaged in fights and that three or four weeks before Marlowe was killed, Kennemore had told him he was going to kill him and on Friday before the death of Marlowe on Saturday again told him he was going to kill him, and he had made the statement that he wished Marlowe was dead; that Kennemore's wife on Friday before February 27, 1965, had separated from her husband and she and her husband had seen a lawyer about divorce proceedings; that on the night of February 27th, Richard Kennemore and his brother William driving a white Valiant borrowed by William from his uncle came upon Don Marlowe on the Gainesville-Jefferson highway after he left work and were chasing him bumper to bumper as they passed Elrod's house going seventy or more miles an hour; that a twelve-gauge shotgun was fired from the Valiant into the left side of the

Corvair, but did not hit Marlowe; that the left front bumper of the Valiant struck the right rear bumper and fender of the Corvair; that the Corvair left the highway, turned over and came to rest on its top; that Marlowe was thrown or crawled from his car; that the Kennemores stopped, found him alive, and shot him at pointblank range of less than two feet with a twelve-gauge shotgun; that they immediately drove away, and that Marlowe died from the shotgun wound within five minutes after he was shot.

While the evidence is entirely circumstantial, it is sufficient to sustain the verdict, and meets the requirement that the facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused. *Code* § 38-109. Enumerations of error 1 through 7 are without merit.

■ In Enumeration of error 8, appellant complains that the court unduly and erroneously restricted defendant's counsel in the cross examination of the witness Angel. Angel, as an expert witness, had stated that based on the skid marks, torn turf, debris, broken glass, and the damaged Corvair, it was his opinion that the Corvair was struck from the rear on the left side by another vehicle. Appellant sought to question the witness as to the opinion of other officers as to what caused the skid marks on the pavement. The trial court sustained the objection to this line of questioning; and, in our opinion, correctly so, as the evidence sought to be elicited was hearsay. *Code* § 38-301.

Ground 8 is without merit.

*Judgment affirmed. All the Justices concur.*