68138. A CHILD'S WORLD, INC. et al. v. LANE.

CARLEY, Judge.

The appellee-plaintiff was one year of age when the instant tort action was instituted against the corporation which operated a day care center and the director of that center. Appellee's complaint alleged that he had been spanked by the appellant-defendant Mrs. Davis, who is the center's director, and that this spanking "amounted to an assault and battery . . . ." The asserted liability of appellant-defendant A Child's World, Inc. was premised upon the theory of respondeat superior. It was further alleged that appellants "and their agents and employees conspired among themselves to hide their wrongdoing." Based upon these allegations, appellee sought both compensatory and punitive damages.

After extensive discovery, the case was tried before a jury. At the close of appellee's evidence, appellants moved unsuccessfully for a directed verdict. Appellants offered no evidence and the case was submitted to the jury. Compensatory and punitive damages were awarded to appellee by the jury. Appellants then moved for judgment n.o.v. or, in the alternative, for a new trial. The motions were denied, and appellants appeal.

1. Appellants first enumerate the denial of their motion for judgment n.o.v. " '[T]he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.' [Cit.]" *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (256 SE2d 916) (1979).

" 'In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable.' [Cit.]" *Irwin v. Arrendale*, 117 Ga. App. 1, 5 (4) (159 SE2d 719) (1967). However, a recovery in the instant case would not be authorized simply upon proof of any physical touching of appellee by appellants. Appellee was in the physical custody of appellants pursuant to the express permission of his parents. Thus, only if the touching of appellee by appellant Mrs. Davis exceeded that authorized would the touching be unlawful and a recovery authorized. Cf. *Harris v. State*, 115 Ga. 578 (41 SE 983) (1902); *Irwin v. Arrendale*, supra at 8 (13).

Appellee's mother testified that appellee bore no red marks or bruises and that she had only learned of the alleged "spanking" incident after receiving a telephone call from a former center employee

some five weeks afterwards. However, there was some direct evidence that appellant Mrs. Davis "popped" appellee on his legs. Furthermore, the jury was given a demonstration of the physical contact that appellant Mrs. Davis made with appellee's person. Accordingly, we cannot say that there was no evidence that appellee was administered a "spanking" and that this "spanking" was, under the circumstances, an unauthorized excessive touching of the then six-month old appellee. The motion for judgment n.o.v. was not erroneously denied.

2. Mr. Robert Edwards, who is the president of the corporate appellant, was called for cross-examination by appellee. During his cross-examination, Mr. Edwards was asked the following two questions: "And [a named employee of the center] told you what she knew about the spanking, didn't she? . . . You didn't happen to mention to [appellee's father] that you also had a good employee . . . who had already told you about what she knew about the spanking, did you?" Over appellants' objection that each of these questions sought to elicit a hearsay response, Mr. Edwards was allowed to answer. The overruling of the hearsay objections is enumerated as error.

Both questions at issue were leading and sought merely a "yes" or a "no" response from Mr. Edwards. The first question sought to determine the existence of a fact, to wit: whether Mr. Edwards had had a conversation with a named employee regarding the incident. The second likewise sought a factual determination as to whether Mr. Edwards himself had then relayed the existence of his conversation with the employee to appellee's father. See *Sellers v. White*, 104 Ga. App. 148, 149 (5) (121 SE2d 385) (1961). "As a fundamental rule, the definition of hearsay does not include out-of-court statements which are not offered as proof of the facts asserted in such statement, but are offered merely as proof that such a statement was made. Assuming that the proof is limited to merely showing that the statement was made and not as evidence of the truth of the fact asserted in the statement, the statement is admissible as original evidence and does not concern the hearsay rule." Green, Ga. Law of Evidence (2nd ed.), § 218. See also *Patterson v. State*, 233 Ga. 724, 726-727 (213 SE2d 612) (1975). Since each question sought to determine the factual existence of a communication between individuals and neither sought to elicit the contents of the communication "as proof of the facts asserted" therein, no hearsay was sought to be elicited thereby and the trial court did not err in overruling that objection. See *McNeal v. State*, 228 Ga. 633, 637 (7) (187 SE2d 271) (1972); *Davidson v. State*, 208 Ga. 834, 836 (5) (69 SE2d 757) (1952).

When Mr. Edwards was subsequently asked to recount the details of the conversations, no hearsay objection was raised. Accordingly, any issue as to whether these subsequent questions sought to elicit inadmissible hearsay rather than admissible original evidence

under OCGA § 24-3-2 was not preserved for appeal. See *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982).

3. For the same reason discussed in Division 2, the trial court did not err in allowing appellee to ask appellant Mrs. Davis the following question on cross-examination: "And there was also a discussion among the workers out there, out at A Child's World, about this incident involving [appellee], wasn't there?" The question was obviously calculated to determine the factual existence of a discussion among the employees of the corporate appellant. The question did not seek to elicit what anyone other than Mrs. Davis herself may have said during that discussion. If Mrs. Davis had personal knowledge that a discussion among the day care center's employees had occurred, she could testify to that fact over a hearsay objection, although what any other employee may have said during that discussion would have been admissible only if shown to be within an exception to the hearsay rule or, if Mrs. Davis' conduct subsequent to the discussion was a relevant issue in the case, as original evidence explanatory of that conduct. See generally *Kennemore v. State*, 223 Ga. 41, 47 (2) (153 SE2d 307) (1967); *Momon v. State*, supra; *Rymer v. Fidelity & Guar. Fire Corp.*, 81 Ga. App. 308 (1) (58 SE2d 471) (1950).

4. Over appellants' hearsay objection, appellee's mother was allowed to testify regarding a telephone call that she had received from a former employee of the day care center. This telephone call occurred some five weeks after the alleged "spanking" had taken place and, according to appellee's mother, was the first time that she had learned of the alleged "spanking" that her child had received. Appellee's mother was then asked to relate what she had been told in this telephone conversation and, over a hearsay objection, testified that the former employee had stated: "I just wanted to call to tell you that I heard that Mrs. Davis spanked your son." The former employee, from whom appellee's mother testified she had received this information, was never called as a witness by appellee.

This testimony by appellee's mother was double hearsay. See *Harper v. State*, 152 Ga. App. 689, 690 (1) (263 SE2d 547) (1979). The unidentified source from whom the former employee had "heard" that appellant Mrs. Davis had "spanked" appellee was at least twice removed from appellee's mother. See *Aycock v. State*, 188 Ga. 550, 566 (9) (4 SE2d 221) (1939); *Price v. Whitley Constr. Co.*, 91 Ga. App. 257, 267 (85 SE2d 528) (1954); *Johnson v. State*, 130 Ga. App. 704, 705 (4) (204 SE2d 302) (1974); *Whitaker v. State*, 133 Ga. App. 324 (211 SE2d 13) (1974).

Appellee urged and the trial court found that this double hearsay testimony was admissible for several reasons. First, the trial court agreed with appellee that the testimony was merely "cumulative" of other testimony that had previously been given in the case. At trial,

the "cumulativeness" of hearsay testimony may not be advanced as an exception to the general rule that hearsay is inadmissible. *Parker v. State*, 162 Ga. App. 271, 272 (5) (290 SE2d 518) (1982).

The res gestae exception was another basis successfully urged for the admission of the double hearsay testimony. The telephone conversation took place some five weeks after the alleged "spanking" and there is no indication whatsoever as to when the former employee had "heard" about the incident. Thus, in a temporal sense, the out-of-court statement was clearly not part of the res gestae of the incident to which it referred. Moreover, as the conversation was recounted by appellee's mother, the former employee did not relate that she had actually seen the spanking. Likewise, there is nothing whatsoever to indicate the means by which the unidentified source had acquired the information concerning the spanking which the former employee had "heard." Thus, the testimony clearly does not relate to a "trustworthy" out-of-court statement, such as is required for the admission of hearsay pursuant to the res gestae exception. " '[T]he *declarant* must have had an opportunity to know the fact declared, i.e., have testimonial knowledge . . . .' [Cit.] Absent evidence showing that the declarant spoke from personal knowledge, the statement is reduced to a mere expression of an opinion or conclusion, which is inadmissible. [Cits.]" (Emphasis supplied.) *Freeman v. Lambert*, 168 Ga. App. 751, 752-753 (309 SE2d 873) (1983).

Likewise, the testimony would not be admissible under OCGA § 24-3-5 as "the declarations by any one of the conspirators . . . ." Neither the former employee nor the unidentified source from whom she had "heard" the information was shown to be a member of any conspiracy. The alleged conspiracy which appellee sought to prove at trial was apparently one to "cover up" the incident *after* it had been reported to appellee's mother in this telephone call, not before. However, even assuming that, solely by virtue of the fact that it had not previously been reported, there was a showing of a pre-telephone call "conspiracy" among the center's employees to "cover up" the incident, the telephone call itself, as recounted by appellee's mother, could only be construed as the former employee's "confession" of that conspiracy. Accordingly, the specifics of the former employee's out-of-court statement were not admissible pursuant to OCGA § 24-3-5. See generally *Crowder v. State*, 237 Ga. 141, 150-155 (227 SE2d 230) (1976).

The only possible basis for the admissibility of substance of the telephone call received by appellee's mother would be as original evidence to explain her subsequent conduct and ascertain her motives. See OCGA § 24-3-2. However, the admissibility of testimony pursuant to OCGA § 24-3-2 is not unlimited. OCGA § 24-3-2 "should be understood not as an exception to the rule against hearsay but as an expla-

nation of what is not hearsay. [Cit.] . . . . When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. [Cits.] But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial), then the information, etc., on which he or she acted shall not be admissible under [OCGA § 24-3-2]." *Momon v. State*, supra at 867. "The necessity for this interpretation will be seen, we believe, from the fact that almost all conduct of almost all people can be 'explained' almost always by something which they may have heard or read." *Teague v. State*, 252 Ga. 534, 535 (314 SE2d 910) (1984). It does not appear that either the conduct of appellee's mother in subsequently "investigating" the spanking or her motives in suing appellants for that spanking was a "relevant" issue in the case at the time the testimony was adduced.

The instant case is virtually indistinguishable from *Evans v. State*, 167 Ga. App. 396 (306 SE2d 691) (1983) which was overruled by *Teague v. State*, supra. The information received by appellee's mother was not merely explanatory of the state of mind or emotion which accompanied her conduct in subsequently investigating the incident or in causing the suit to be filed. Essentially, the out-of-court statement was offered to validate the truthfulness of the contention that appellee had been "spanked" and thus to vindicate rather than to explain the subsequent investigatory conduct and litigative motives of appellee's mother. The out-of-court statement was offered to prove the truth of matters relating to the relevant and material issue in the case. The issue in the case was whether appellee had been "spanked," within the meaning of the use of *excessive* physical force by Mrs. Davis, and although the direct evidence in this regard was sufficient, it was, at best, slight. Accordingly, we cannot say that the erroneous admission of "bolstering" double hearsay testimony concerning a report that appellee was "spanked" was harmless. See *Parker v. State*, supra at 275. The admission of the out-of-court statement in the instant case was reversible error.

5. Over appellants' hearsay objection, appellee's mother was permitted to testify regarding a telephone conversation that she had with Ms. Bledsoe, who was an employee of the day care center. According to appellee's mother, Ms. Bledsoe had stated in this conversation that appellee had been "spanked" by appellant Mrs. Davis. The admission of this testimony is enumerated as error.

The testimony was clearly hearsay because, as discussed in Division 4, it was not admissible as original evidence. Accordingly, the issue is whether the testimony was within any hearsay exception. Ap-

pellee first contends that the testimony was admissible hearsay because Ms. Bledsoe was an agent of the corporate appellant. See OCGA § 24-3-37. However, "[t]he declarations or admissions of an ordinary agent or servant, unless part of the res gestae of the transaction in controversy, do not bind the principal, and, being mere hearsay, have no probative value. [Cit.]" *Baker v. Lowe Elec. Co.*, 47 Ga. App. 259 (3) (170 SE 337) (1933). The testimony does not fall within the res gestae exception. The telephone conversation between appellee's mother and Ms. Bledsoe took place some five weeks after the alleged spanking and was clearly a mere narrative statement of a past event rather than a part of the res gestae of the incident Ms. Bledsoe purportedly described. See *Southern R. Co. v. Allen*, 118 Ga. App. 645, 646 (1) (165 SE2d 194) (1968).

However, appellee also asserts that the testimony regarding Ms. Bledsoe's telephone conversation was admissible for impeachment purposes. Ms. Bledsoe was an eyewitness to the incident. Our review of the transcript of the testimony given by Ms. Bledsoe demonstrates that she implicitly denied that appellee had ever been "spanked" by appellant Mrs. Davis. After the witness thus implicitly denied that appellee had been "spanked," she responded in the negative when asked if she had ever told appellee's mother that the child had been "spanked." Therefore, appellee was able to lay the proper foundation for the possible later impeachment of Ms. Bledsoe's testimony that Mrs. Davis had not "spanked" appellee. Under these circumstances, we cannot say that the testimony of appellee's mother regarding Ms. Bledsoe's telephone conversation was not admissible as a prior inconsistent statement impeaching of the latter's trial testimony regarding the incident. "It has long been the rule in this state that statements which would otherwise be hearsay are not within the scope of the rule against hearsay when used as prior inconsistent statements to impeach the testimony of a witness. [Cits.]" *Simmons v. State*, 139 Ga. App. 180, 181 (228 SE2d 185) (1976).

6. " ' "Any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error" ' [Cit.]" *Firestone Tire & Rubber Co. v. Pinyan*, 155 Ga. App. 343, 352 (9) (270 SE2d 883) (1980).

7. Because the judgment is being reversed for the erroneous admission of hearsay discussed in Division 4, we need not decide whether the verdict was excessive or whether the award of punitive damages was authorized.

8. The denial of the motion for judgment n.o.v. is affirmed; the denial of the motion for new trial is reversed.

*Judgment affirmed in part and reversed in part. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 29, 1984.

*William B. Hardegree, William S. Cowsent*, for appellants.
*J. Ronald Mullins, Jr.*, for appellee.