A97A2223. HILLIARD et al. v. J. C. BRADFORD & COMPANY.
(494 SE2d 38)

ELDRIDGE, Judge.

This is an appeal from an order of the Chatham County Superior Court confirming an arbitration award in favor of the plaintiff, J. C. Bradford & Company ("Bradford").

Bradford is a Tennessee limited liability company authorized to do business in the State of Georgia as a licensed securities broker-dealer. The defendants, William L. and Diane L. Hilliard, held a margin account with Hanifen, Imhoff, Inc., which they transferred to Bradford. On June 22, 1994, at Bradford's Savannah, Georgia office, the Hilliards executed a securities margin agreement regarding their brokerage account with Bradford in order to facilitate such transfer. In such margin agreement, the Hilliards agreed that all controversies that arose between the Hilliards and Bradford regarding the Hilliards' brokerage account would be resolved by mandatory binding arbitration. The principal investment of the Hilliards in their margin account with Bradford was 110,500 shares of common stock of Beta Wells Service, Inc. ("Beta"), which at the time they opened their account and executed the margin agreement was listed on the American Stock Exchange.

On October 21, 1994, the American Stock Exchange de-listed Beta from trading on the exchange. As a result of this announcement, the per share market price began to drop significantly, and Bradford issued an initial margin call of $454,337 to the Hilliards. The Hilliards failed to meet this margin call, as well as the margin calls subsequently issued by Bradford. Therefore, on October 25, 1994, pursuant to the terms of the margin agreement and following written notice, Bradford began to liquidate the securities held in the Hilliards' account. Bradford was able to liquidate all of the non-Beta securities in the Hilliards' account. Beta was re-listed on the American Stock Exchange in November 1994. Between November 1994 and September 11, 1995, Bradford was able to sell all but 43,000 shares of Beta at various prices ranging from $3.625 per share to as little as $2 per share.

On February 1, 1995, Bradford filed a statement of claim with the Arbitration Department of the National Association of Securities Dealers, Inc. ("NASD"). On April 12, 1995, the Hilliards filed their statement of answer and counterclaim to Bradford's statement of

claim. Both Bradford and the Hilliards signed a uniform submission agreement on April 12 and May 11, 1995, respectively, under which they agreed to arbitrate their dispute in accordance with the rules and procedure of the NASD. Bradford filed its reply to the counterclaim on July 18, 1995.

The arbitrators heard evidence from the parties on December 14, 1995, and April 15 and 16, 1996. On May 9, 1996, the NASD issued its decision in this case, finding the Hilliards liable to Bradford for the sum of $260,049.17 plus interest and $12,750 in attorney fees. NASD denied the Hilliards' counterclaim and dismissed it in its entirety.

On May 23, 1996, Bradford filed a motion to confirm the arbitration award in the superior court. In response to this motion, the Hilliards filed a petition for removal of this case to the United States District Court. On the same day, the Hilliards also filed their opposition to the motion to confirm in the United States District Court, as well as a cross-motion to vacate and/or modify the award. However, on motion of Bradford, this case was remanded to the Superior Court of Chatham County on July 26, 1996.

On October 7, 1996, the trial court granted Bradford's motion to confirm the arbitration award after finding that the Hilliards had failed to file a timely answer. However, the Hilliards moved the trial court to vacate such order, claiming that they had filed a timely answer in the district court after the removal of the case. On November 13, 1996, the trial court entered a consent order vacating its order of October 7, 1996.

On March 7, 1997, the trial court confirmed the arbitration award after both sides were given an opportunity for a hearing. It is from this order that the Hilliards have appealed.

In this case, where there has been no agreement by the parties to be bound by state arbitration law, and since the transaction involved commerce within the meaning of the Federal Arbitration Statute, the state law and policy with respect thereto must yield to the preemption of the paramount federal law. *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790 (469 SE2d 759) (1996); see *West Point-Pepperell v. Multi-Line Indus.*, 231 Ga. 329, 331 (201 SE2d 452) (1973); *American Airlines v. Louisville &c. Air Bd.*, 269 F2d 811 (6th Cir. 1959).

The trial court is required by law to accept the arbitrator's findings of fact and may vacate the award only: (1) "[w]here the award was procured by corruption, fraud, or undue means"; (2) "[w]here there was evident partiality or corruption in the arbitrators"; (3) "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other

misbehavior by which the rights of any party have been prejudiced"; or (4) "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 USCA § 10 (a).

1. In their first enumeration of error, the Hilliards allege that the trial court erred by excluding and/or failing to rule on the admissibility of relevant and material evidence at the hearing on Bradford's motion to confirm the arbitration award and the Hilliards' motion to vacate the arbitration award.

(a) First, the Hilliards contend that the trial court erred by failing to admit various tapes of the arbitration proceedings into evidence. The Hilliards allege that they requested copies of the arbitration hearing tapes from NASD; that when they received the first set that it contained numerous inaudible sections and a 45-minute gap on tape 3B; that the second set requested contained the same problems; and that a final set contained the same problems, along with an additional 15 seconds missing from tape 3B. The Hilliards attempted to introduce these three sets of tapes that they claim they received from NASD into evidence at the confirmation hearing to show that the arbitration hearing tapes had been tampered with and substantial portions of the hearing were missing from the tapes.

For sound recordings to be admissible into evidence in Georgia, a proper foundation must first be laid. It must be shown that the mechanical transcription device was capable of taking testimony; that the operator of the device was competent to operate the device; that changes, additions, or deletions have not been made; and that the testimony was elicited freely and voluntarily made, without any kind of duress. Further, the authenticity and correctness of the recordings must be established; the manner of preservation of the record must be shown; and the speakers must be identified. *Central of Ga. R. Co. v. Collins*, 232 Ga. 790 (209 SE2d 1) (1974); *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211-212 (88 SE2d 167) (1955). "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to admissibility will be upheld on appeal." (Citations and punctuation omitted.) *Hall v. State*, 176 Ga. App. 428, 429 (1) (336 SE2d 291) (1985). The Hilliards failed to lay the evidentiary foundation for the admission of the tapes. Therefore, the trial court's ruling was *not* clearly erroneous.

Further, in order to resolve any dispute the Hilliards had concerning whether the tapes had been tampered with, the trial judge requested and reviewed a certified set of tapes directly from the NASD. The certified tapes were properly admitted into evidence. Therefore, even if the trial court erred in failing to admit the copies of the tapes sent directly to the Hilliards, such error is harmless since the trial court had the entire arbitration hearing before it in the form

of the certified tapes sent directly from NASD. See *Travelers Ins. Co. v. Trans State*, 172 Ga. App. 763 (324 SE2d 585) (1984) (holding that any error by the trial judge in failing to admit a transcript was harmless as the transcript was cumulative of testimony already presented).

(b) The Hilliards further argue that the trial court erred in failing to admit the affidavit of Dr. Nelson at the confirmation hearing as evidence that the arbitrators failed to continue the portion of the arbitration hearing set for April 15, 1996, upon a showing of good cause. The trial court reserved ruling on the admission of Dr. Nelson's affidavit and ultimately confirmed the award without indicating a ruling on the affidavit's admissibility.

Failure of the trial court to make a final ruling on a motion precludes our review of the motion on appeal. *Metro Atlanta Trucking Co. v. Kyzer*, 217 Ga. App. 630 (458 SE2d 416) (1995); *Staggs v. Wang*, 185 Ga. App. 310, 312 (363 SE2d 808) (1987); see *Paulsen Street Investors v. EBCO Gen. Agencies*, 224 Ga. App. 507, 508 (481 SE2d 246) (1997). It is the duty of trial counsel to invoke a final ruling on his motions to preserve the record for appellate review. *Metro Atlanta Trucking Co. v. Kyzer*, supra at 630; *Staggs v. Wang*, supra at 312. After the trial court entered its judgment confirming the arbitration award, the burden was then on the Hilliards to file some type of motion or action to invoke the trial court's ruling on the admissibility of Dr. Nelson's affidavit, such as a motion to set aside the judgment. However, the Hilliards failed to do so. Under these circumstances, there is nothing preserved for appellate review.

(c) The Hilliards next assert that the trial court erred by failing to admit into evidence Mr. Hilliard's testimony outlining remarks made over the telephone to him by a NASD officer located in New York. The Hilliards sought to introduce such testimony as proof that the NASD office in New York felt it was appropriate for a continuance of the April 15, 1996 arbitration hearing to be granted, and therefore, the arbitrators were guilty of misconduct in refusing to postpone the hearing. We disagree, because such testimony was neither relevant nor material.

In support of their claims, the Hilliards cite *A Child's World v. Lane*, 171 Ga. App. 438, 440 (319 SE2d 898) (1984). The facts of *A Child's World* are distinguishable from this case. In *A Child's World*, this Court held that "[s]ince each question sought to determine the factual existence of a communication between individuals and neither sought to elicit the contents of the communication as proof of the facts asserted therein, no hearsay was sought to be elicited thereby." (Citations and punctuation omitted.) Id. at 439. In contrast, the Hilliards attempted to introduce testimony of such conversation into evidence not to establish that a discussion took place, but rather

to establish that the Hilliards had been told by the New York office of NASD that they should receive a continuance and that the arbitrators' denial of a continuance was unfair and prejudicial. See OCGA § 24-3-2.

It is a well-established rule in Georgia that hearsay evidence is not admissible to prove the truth of the matter asserted, unless the offered evidence falls under one of the recognized exceptions to the general rule excluding hearsay. OCGA § 24-3-1 et seq. The Hilliards made no showing that they had attempted to procure the NASD officer's attendance at the hearing to confirm the arbitration award or that the testimony fell within one of the exceptions.

Further, the communication that the Hilliards sought to introduce into evidence was not between Mr. Hilliard and one of the arbitrators, who had the authority to continue the arbitration hearing, but was with Mr. Jones, who was an administrator in the New York office and who, in addition to not having the authority to continue the hearing, was not privy to the case history. Therefore, any opinion that an administrator in the New York office may have had as to whether the arbitrators in Atlanta should continue the arbitration hearing would not be relevant and material to determine whether or not the arbitrators were guilty of misconduct in refusing to postpone the hearing.

2. The Hilliards further contend that the trial court erred by failing to vacate the arbitration award due to the alleged partiality of the arbitrators. Specifically, the Hilliards contend that (1) the arbitrators yelled and interrupted the Hilliards during the course of the arbitration; and (2) the arbitrators placed an impossible burden of proof on the Hilliards as to the market value of the Beta stock.

The party claiming partiality on the part of the arbitrators has the burden of proof in the confirmation proceedings. *Saxis Steamship Co. v. Multifacs Intl. Traders*, 375 F2d 577 (2nd Cir. 1967). Further, "[a]rbitrators are not obliged to apply strict rules of law in the matter at hand, when they act within the scope of their authority, unless the parties require adherence to such rules. In fact, it is stated that they may disregard the traditional rules of law. Accordingly, as a general rule, arbitrators are free to apply broad principles of justice and good conscience and decide according to their concept or notion of justice. They are still obliged, however, to be guided by the basic agreement of the parties. 6 CJS, [Arbitration,] § 70." (Punctuation omitted.) *Bartlett v. Dimension Designs*, 195 Ga. App. 845, 848 (395 SE2d 64) (1990), overruled on other grounds, *Pace Constr. Corp. v. Northpark Assn.*, 215 Ga. App. 438, 439 (450 SE2d 828) (1994). "In *French v. Merrill Lynch &c.*, 784 F2d 902 (3) & (4) (9th Cir. [1986]), the court concluded that an arbitrator's decision must be upheld unless it is completely irrational or it constitutes a manifest disregard of the

law." *Bartlett*, supra at 848. Further, it is well established that in reviewing an arbitration award, deference given to an arbitrator's decision accompanies not only a review of the final order itself, but also is given to the arbitrator's decision to control the order, procedure, and presentation of evidence. *First Preservation Capital v. Smith Barney, Harris Upham & Co.*, 939 FSupp. 1559 (S.D. Fla. 1996).

It is the law in Georgia that a trial court's ruling confirming an arbitration award should not be disturbed unless it is clearly erroneous and not supported by any evidence in the record. *Cotton States Mut. Ins. Co. v. Nunnally Lumber Co.*, 176 Ga. App. 232 (335 SE2d 708) (1985); see *First Options of Chicago v. Kaplan*, 514 U. S. 938 (115 SC 1920, 131 LE2d 985) (1995) (holding that the standard of review of district court decisions requires accepting findings of fact not clearly erroneous, but deciding questions of law de novo). In this case, the trial court reviewed the Hilliards' claims of partiality and determined that the claims were unfounded and did not preclude confirmation of the award. After reviewing the record, the trial court's ruling must be affirmed, since it was not clearly erroneous and is supported by ample evidence.

3. The Hilliards also contend that the trial court erred by failing to vacate the arbitration award due to the failure of the arbitrators to grant a continuance upon sufficient cause shown. We disagree.

It is well established in Georgia that "[t]he grant or denial of a request for continuance lies within the discretion of the trial court, see OCGA § 9-10-167 (a), and will not be disturbed on appeal absent an abuse of discretion." *Purvis v. Ballantine*, 226 Ga. App. 246, 247 (1) (a) (487 SE2d 14) (1997); *Americani v. Sidky*, 199 Ga. App. 823 (406 SE2d 259) (1991). While there is no Georgia authority directly addressing the continuance of an arbitration hearing such as this one, OCGA § 9-9-70 governs the postponement of arbitration proceedings in medical malpractice actions in Georgia and states that an arbitration panel *may* postpone the hearing of a case when one party is not ready. Arbitrators in medical malpractice cases are not required to postpone an arbitration proceeding under any circumstances, but rather the decision is left to the arbitrator's discretion as long as such decision is "consistent with the ends of justice, considering all the circumstances of the case." OCGA § 9-9-70.

Federal courts uniformly have held that whether to continue a hearing is in the discretion of the arbitrator and have concluded that the issue "comes down to the question whether there was any reasonable basis for the arbitrators to refuse to postpone the hearing." (Citations and punctuation omitted.) *Marshall & Co. v. Duke*, 941 FSupp. 1207, 1211 (N.D. Ga. 1995), aff'd, 114 F3d 188 (11th Cir. 1997); *DVC-JPW Investors v. Gershman*, 5 F3d 1172 (8th Cir. 1993);

*Schmidt v. Finberg*, 942 F2d 1571 (11th Cir. 1991).

Furthermore, in this case, the parties signed a Uniform Submission Agreement stating that the arbitration hearing would be governed pursuant to the NASD's Code of Arbitration Procedure. Section 30 of the NASD Code of Arbitration Procedure states that the arbitrators *may, in their discretion,* adjourn any hearing.

The record shows that the Hilliards requested a continuance of the December 14, 1995 arbitration hearing date because they were not ready to proceed with the presentation of the case. After the close of Bradford's case, the arbitration hearing was rescheduled for April 15, 1996, some four months later. The Hilliards contend that on the evening of April 14, 1996, William Hilliard suffered an acute attack of polycythemia and was treated at the Chandler Hospital Emergency Room from 9:40 p.m. until 1:00 a.m. the morning of the hearing. Mr. Hilliard alleges that he received both Demerol and Phenergan intravenously and was told to see his doctor the following day.

However, on the morning of April 15, 1996, Mr. Hilliard was able to drive to Atlanta, while Mrs. Hilliard sat in the back seat of the car, and continued to prepare for the hearing. As they drove toward Atlanta, Mr. Hilliard stopped at various intervals and contacted both the Atlanta and New York offices of the NASD, attempting to obtain a continuance due to his illness. Mr. Hilliard's request for a continuance was ultimately denied. He was, however, given a deferral of the hearing until 1:00 p.m. on that day. Upon arrival, Mr. Hilliard stated his medical condition on the record. He presented no affidavit from a doctor that he was unable, because of his illness, to go forward with the arbitration hearing and did not request a continuance of the hearing once he arrived. Mrs. Hilliard was present during the entire hearing. Furthermore, polycythemia is a chronic condition that is aggravated by stress; there was no showing by the Hilliards that Mr. Hilliard's condition would improve at a future time.[1] Additionally, the record fails to reveal that Mr. Hilliard had difficulty proceeding due to his chronic condition.

Under the facts of this case, there was a reasonable basis for the arbitrators' refusal to postpone the hearing a second time, and therefore, there was no abuse of discretion.

4. The Hilliards contend that the trial court erred by failing to vacate the arbitration award because the arbitrators' award of attorney fees exceeded their authority. We disagree.

"In light of the federal policy favoring arbitration at work here,

---

[1] Polycythemia is defined as follows: (1) "an increase above the normal in the number of red cells in the blood"; (2) "a secondary p. resulting from anoxia, e.g., in congenital heart disease, pulmonary emphysema, or prolonged residence at high altitude"; (3) "associated with hypertension but without splenomegaly." Stedman's Medical Dictionary (22nd ed.), p. 999.

the Court's task is to resolve all doubt in favor of the arbitrator's authority to award a particular remedy. This approach is fully consistent with the presumption of correctness afforded arbitration awards and the summary nature of court confirmation of such awards. In fact, the [9 USCA] § 10 (a) (4) prohibition against arbitrators' exceeding their powers is to be accorded the narrowest of readings." (Citations and punctuation omitted.) *Marshall & Co. v. Duke*, supra at 1213; *Blue Tee Corp. v. Koehring Co.*, 999 F2d 633, 636 (2nd Cir. 1993); *Willoughby Roofing &c. Co. v. Kajima Intl.*, 776 F2d 269, 270 (11th Cir. 1985).

Prior to the arbitration, the parties had agreed to submit all controversies between them to binding arbitration. The parties submitted their case to the NASD for arbitration and consented to be governed by the rules and by-laws of the NASD. Section 43 (c) of the NASD Code of Arbitration Procedure states "In addition to forum fees, the arbitrator(s) may determine in the award the amount of costs incurred pursuant to Sections 30, 32, 33, and 37 and, unless applicable law directs otherwise, *other costs and expenses of the parties and arbitrator(s) which are within the scope of the agreement of the parties*." The award of attorney fees has been upheld under § 43 (c) by the courts. *Mastrobuono v. Shearson Lehman Hutton*, 514 U. S. 52 (115 SC 1212, 131 LE2d 76) (1995) (holding award of punitive damages on ground that § 43 (c) of NASD rules authorized such an award); *Marshall & Co. v. Duke*, supra (finding that arbitrators under authority of the NASD rules could award attorney fees in exceptional cases).

Further, both the plaintiff and the defendants affirmatively sought an award of attorney fees from the panel in their pleadings and before the panel at the arbitration hearing. "The parties['] mutual agreement to have any and all fee issues decided by the panel is evidenced by their joint submission of the issues to the panel. Having agreed to have the fee issue decided by the panel, the parties will not now be heard to object that the panel lacked the power to decide the issues submitted." (Footnote and emphasis omitted.) *Marshall & Co. v. Duke*, supra at 1215.

Accordingly, for all of the foregoing reasons, the trial court did not err in finding that the award of attorney fees did not exceed the arbitration panel's authority.

5. In their final enumeration of error, the Hilliards contend that the trial court erred by failing to vacate the arbitration award for other misbehavior on the part of the arbitrators which prejudiced their rights. Specifically, the Hilliards contend that the trial court erred by failing to dismiss the arbitration award on the ground that all copies of the tapes of the hearing provided by the NASD, including the certified copy sent directly to the court and filed of record,

had numerous inaudible sections and portions of the second hearing were missing. In this case, the Hilliards failed to present any credible admissible evidence at the confirmation hearing showing that such tapes were incomplete. Further, the Hilliards have not made any showing of how their rights were prejudiced as a result of the allegedly incomplete tapes. Moreover, after a review of the certified copies of the tapes, the trial court confirmed the award. Therefore, the Hilliards' assertions based on this ground must be rejected.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 30, 1997 —
RECONSIDERATION DENIED NOVEMBER 13, 1997 — 

*Ronald C. Berry*, for appellants.
*Brennan & Wasden, Wiley A. Wasden III, James C. Joedecke, Jr.,* for appellee.