**SECOND DIVISION
MILLER, P. J.,
RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 25, 2019**

# In the Court of Appeals of Georgia

A19A0976. ULTRA GROUP OF COMPANIES, INC. v. ALLI.

REESE, Judge.

Ultra Group of Companies, Inc. ("Ultra") appeals from a final order issued by the Superior Court of Fulton County vacating part of an arbitration award entered pursuant to proceedings conducted under OCGA § 50-27-102 (d).[1] The arbitration proceedings concerned allegations of breach of contract and failure to pay revenue that Citgo Food Mart, Inc. ("Citgo")[2] and Mumtaz Alli ("Alli") allegedly owed to

---

[1] OCGA § 50-27-102 (d) required arbitration to resolve any disputes between licensees concerning contracts involving coin operated amusement machines. See OCGA § 50-27-70 (b) (1) (defining "licensee"); (b) (2) (defining "[b]ona fide coin operated amusement machines").

[2] The trial court confirmed the Award against Citgo, and that ruling is not at issue on appeal.

Ultra under a Location Agreement ("Agreement")[3] for the lease of coin operated amusement machines ("COAMs") that were located in a convenience store operated by Citgo. The arbitrator awarded Ultra monetary damages against Citgo and Alli (in her personal capacity), jointly and severally. In the instant appeal, Ultra challenges the trial court's order vacating the award against Alli in her personal capacity based on its finding that the arbitrator lacked personal jurisdiction over Alli. For the reasons set forth infra, we affirm.

The record shows the following, undisputed facts. On May 11, 2011, Ultra entered into the Agreement with Citgo, a "corporation[,]" and Alli, an "individual[.]"[4] After a dispute arose under the Agreement, Ultra obtained an "Arbitration Referral"[5] from the Georgia Lottery Corporation ("GLC") in July 2015; the arbitration referral identified Citgo as the sole "Location Licensee" involved in the dispute. Based on the referral, in October 2015, Ultra filed an arbitration demand, identifying Citgo as the

---

[3] See OCGA § 50-27-70 (b) (6) (defining "[l]ocation license").

[4] Although Alli contended during the arbitration hearing that she had not signed the Agreement and was not a party thereto, the arbitrator rejected that argument, finding Alli's testimony on the issue lacked credibility.

[5] See OCGA § 50-27-102 (d) (1), (2), (3).

2

"Respondent[,]"[6] i.e., the "Name of the Party on whom Demand for Arbitration is made"; the demand did not refer to Alli at all. In the demand, Ultra described the dispute to be arbitrated as follows: "While under contractual obligation and balance owed, location licensee demanded removal of Ultra machines during temporary closure, then installed competitor's machines." Ultra subsequently amended the arbitration demand, still identifying Citgo as the sole "Respondent[,]" but also naming Alli as the "Representative/Attorney of the Party on whom Demand for Arbitration is made[.]" There are no documents in the record showing that Ultra served Alli with either the arbitration referral or the arbitration demand.[7]

In March 2016, an arbitration hearing was conducted. The arbitrator issued a partial arbitration award on July 18, 2016, and, on July 29, 2016, the arbitrator issued a final monetary award to Ultra against Alli and Citgo, jointly and severally. The certificates of service attached to the partial and final awards showed that the awards were served on the attorney representing "Citgo Food Mart, Inc." There are no

---

[6] Although the demand also identified "Lucky Bucks, Inc." as another "Respondent[,]" Ultra dismissed Lucky Bucks from the case before arbitration.

[7] See OCGA § 50-27-102 (d) (2) ("Service by registered mail, courier delivery, or overnight mail delivered to the agent's registered address and to the e-mail address shall be adequate service on the licensee for a hearing on the dispute.").

3

documents in the record showing that Alli, or an attorney representing her, was served with either the partial or final arbitration award.

In September 2016, Ultra filed a motion to confirm the arbitration award in the Superior Court of Fulton County.[8] Alli and Citgo responded to the motion and moved to vacate the arbitration award as to Alli in her personal capacity,[9] arguing that the arbitrator lacked personal jurisdiction over her because she was not named as a party in the arbitration referral or the arbitration demand, nor was she served with either document. After conducting a hearing, the trial court issued an order confirming the arbitrator's final award. Alli and Citgo appealed the trial court's order to this Court, and the case was docketed as Case No. A17A1638.

---

[8] See OCGA § 9-9-12 ("The court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court as provided in this part.").

[9] See OCGA § 9-9-13 (b) ("The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by . . . (4) [a] failure to follow the procedure of [the Georgia Arbitration Code], unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) [t]he arbitrator's manifest disregard of the law."); (c) ("The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a demand for arbitration or order to compel arbitration if the court finds that: (1) The rights of the party were prejudiced by one of the grounds specified in subsection (b) of this Code section[.]").

4

In a November 14, 2017 order in Case No. A71A1638, this Court vacated the trial court's confirmation of the arbitration award and remanded the case so that the parties could complete the appellate record. This Court's order stated, in relevant part, as follows:

> During the confirmation proceedings and now on appeal, [Alli] contends that the arbitrator lacked personal jurisdiction over her because she was not named as a respondent in the demand for arbitration or served the demand as a respondent, and the demand and service filings show that she participated in the proceedings only as a representative of Citgo. However, *Ultra argues the "correct" demand for arbitration shows that Alli was named as a respondent, that this demand was served upon her*, the same attorney who represented Citgo made an appearance on Alli's behalf, and that her attorney filed a response and counterclaim specifically on her behalf. Further, Ultra argues that Alli did not raise the issue of personal jurisdiction at [any time] during the arbitration proceedings, although she appeared at the hearing and challenged subject matter jurisdiction.
>
> [Alli] filed a reply brief, pointing out that Ultra has failed to include in the record on appeal any evidence that would support its contentions about Alli being included on any arbitration demand filed in these proceedings and being served. Further, Alli continues to insist that she was not listed in any arbitration demands, and that she was never personally served.
>
> *Obviously, both set[s] of facts cannot be true – Alli was either listed on an arbitration demand, albeit on one we do not have in the*

*record before us, served with that demand, and represented and participated in the arbitration proceedings as a party, or she was not.*

Further, while Ultra's failing to perfect the record might be fatal to its contentions, Alli has also failed to point to anything in the record to show that she preserved these arguments during the arbitration proceedings. And it is well established that[,] unlike subject matter jurisdiction, challenges to personal jurisdiction, including challenges to service, may be waived. However, while failure to raise this issue before the arbitrator might be fatal to Alli's claim and render Ultra's failure to perfect the record irrelevant, the record is not clear on the matter. . . .

This Court is thus faced with the untenable situation of attempting to render a decision in this case based on an incomplete and possibly inaccurate record. Accordingly, *in light of the deficiencies by both parties in presenting their arguments to this Court, the judgment of the superior court is vacated, and the case remanded to give the parties an opportunity to remedy these appellate record deficits by supplementing the record with all the documents in the record before the arbitrator that pertain to the personal jurisdiction issue and preservation of this error for our consideration.* Upon completion of the record, the superior court may re-enter its original order or enter a different order as it deems appropriate. Any appeal from that order by either party must be filed within 30 days, at which time any issues raised in the present appeal may be reasserted.[10]

---

[10] (Citations and footnotes omitted; emphasis supplied.)

6

Following remand of the case, the trial court reopened the case and conducted a hearing specifically to allow the parties to present evidence that supported their arguments regarding the personal jurisdiction issue. After allowing the parties some time to discuss this Court's remand order off the record, the trial court began the hearing by asking Ultra's counsel, Paul Oliver, whether Alli was a named party to the arbitration demand and whether she was served with the demand. Oliver, however, did not answer the question; instead, he gave a long, disjointed statement about what the parties' attorneys allegedly had said to one another and had filed during the litigation, including his claim that Citgo's former attorney had admitted, during a conference call and an unrecorded preliminary hearing, that Alli and Citgo were both parties to the arbitration.[11] Eventually, the trial court simply asked Oliver if a certificate of service existed that showed Alli had been served with the arbitration demand. Oliver responded that "[t]here would be a document that showed that the demand was served on her initially. The issue would be whether [the demand] included her as a defendant or only because she was a corporate person. I can provide

---

[11] Oliver did not call that attorney as a witness to prove his contentions. See Division 5, infra.

you with that document. I think I do have that. I don't have it with me, but I can have it down here later today or tomorrow."

Even though the trial court allowed the parties an additional two weeks following the hearing to supplement the record with any documents that supported their arguments, *Oliver never filed the allegedly "correct" demand and/or proof of service in the trial court*. In fact, there is no certificate of service or other document in the record that shows Ultra served the arbitration demand *on anyone at all*. Thus, the record supports the trial court's finding that Ultra "did not submit as documentary evidence a 'correct' demand for arbitration which listed Alli as a respondent and was served on Alli[,] as represented by [Ultra] on appeal and to [the trial court] at the July 27, 2018 hearing [following remand]."

In other words, this Court remanded the case, and the trial court conducted a hearing, for the sole purpose of giving the parties a chance to prove their conflicting assertions on two specific issues: whether Alli had been named as a party in her personal capacity in the arbitration demand, and whether she had been served with that demand. Yet, Ultra's counsel failed to produce a copy of any document that

supported the statements that he had made to *both* this Court and the trial court and that would have been dispositive on the issues presented.[12]

Following the hearing, the trial court ruled that

to be a party to an arbitration[,] you must . . . first be identified as such in a demand for arbitration in the same manner a defendant must be identified in a complaint to be a party to the complaint. If an individual is not identified as a defendant, there is no requirement he be served[,] and serving the individual without identifying him as a defendant would not make him a party to the suit, even if the individual mistakenly filed an answer.

The court found that, based on the evidence in the record of the arbitration proceedings, Ultra did not identify Alli as a respondent in the arbitration demand, nor did it amend the demand to add her as a respondent, so she was never made a party to the arbitration.[13] The court also found that Ultra's failure to name Alli as a party

---

[12] Notably, Ultra has conceded in its brief in the instant appeal that the arbitration demand "was served upon Citgo and did not specifically name Mumtaz Alli."

[13] See OCGA § 9-11-10 (a) ("In the complaint[,] the title of the action shall include the names of all the parties[.]"); see also OCGA §§ 9-11-15 (a) (adding a party to an existing suit by amendment); 9-11-17 (a) (substitution of the real party in interest); 9-11-19 (joinder of necessary parties); 9-11-20 (a) (permissive joinder of parties); 9-11-21 (addition of parties by order of court); *Bd. of Commrs. v. Johnson*, 311 Ga. App. 867, 871-873 (2), n. 5 (717 SE2d 272) (2011) (The plaintiff had no

9

or to amend the demand to add her as a party "eliminated the need to serve her. Indeed, there was nothing with which to serve her[ because] Alli was not a respondent in the arbitration action." In addition, the trial court ruled that Alli was not required to respond to the arbitration demand because she was not a party to the proceeding and had never been served with the arbitration demand.[14] Although Ultra argued that Alli waived her personal jurisdiction defense because, inter alia, Citgo's attorney filed responsive documents in the arbitration proceedings that referred to Alli as a "Respondent," the trial court rejected that argument, ruling that such references did not make Alli a party to the proceedings when Ultra had not named her as a respondent in its arbitration demand, had not amended the demand to add her as a respondent, and had never served her with the demand.

---

claim against a county board member in his individual capacity because he was not named as a defendant in his individual capacity, and the plaintiff failed to obtain leave of court to add him as a defendant, pursuant to OCGA § 9-11-15. Further, the absence of the member being listed as a defendant in his personal capacity was not a mere misnomer that could be corrected without leave of court under OCGA § 9-11-10 (a), because "[c]orrection of a misnomer does not add a new and distinct party.") (citation and punctuation omitted).

[14] See OCGA § 9-11-12 (a) ("A defendant shall serve his answer within 30 days after the service of the summons and complaint upon him, unless otherwise provided by statute.").

Consequently, the trial court ruled that personal jurisdiction over Alli was lacking in the arbitration proceedings, that the arbitrator had overstepped his authority in issuing an award against Alli in her personal capacity, and that the evidence established the arbitrator's manifest disregard of the law.[15] Thus, pursuant to OCGA §§ 9-9-12 and 9-9-13 (c), the court vacated the arbitrator's award to the extent the arbitrator ruled that Alli was personally liable for Ultra's damages claim. This appeal followed.

On appeal from a trial court's ruling on whether an arbitration award should be confirmed or vacated, this Court should not disturb the ruling if there is any evidence to support it.[16] With this guiding principle in mind, we turn now to Ultra's specific claims of error.

1. Ultra first argues that the trial court erred in ruling that, "to be a party to an arbitration you must first be identified in a complaint to be a party to the complaint." Ultra contends that this statement "is an incomplete statement of the facts in this case and [is] incorrect as a matter of law." Pretermitting whether the statement Ultra

---

[15] See OCGA § 9-9-13 (b) (4), (5).

[16] See *Hilliard v. J. C. Bradford & Co.*, 229 Ga. App. 336, 341 (2) (494 SE2d 38) (1997).

complains about is legally correct, Ultra's claim of error lacks merit, because it materially misquotes the trial court's *actual* ruling, which was as follows: "to be a party to an arbitration[,] you must . . . first be *identified as such in a demand for arbitration in the same manner a defendant must be* identified in a complaint to be a party to the complaint."[17] Ultra has not presented any argument or authority establishing that the trial court's *actual* ruling constituted reversible error. Thus, this presents nothing for this Court to review.[18]

2. Ultra argues that the trial court erred in rejecting its argument that, even though Alli was not named as a party (respondent) in the arbitration demand or served with the demand, she waived any objection regarding the absence of personal jurisdiction because Citgo's attorney filed documents in the arbitration action that listed Alli as one of the "Respondents[.]"

Under OCGA § 15-1-2, however, "[p]arties may not give jurisdiction to a court by consent, express or implied, as to the person or subject matter of an action." And, although "lack of jurisdiction of the person may be waived, insofar as the rights of the

---

[17] (Emphasis supplied.)

[18] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

*parties* are concerned," personal jurisdiction may not be waived if it prejudices third persons.[19]

Here, the record shows that, in responsive filings in the arbitration proceedings, Citgo's attorney listed the "Respondents" in the style of the case as, inter alia, "Mumtaz Alli, Citgo Food Mart, Inc., 3625 Chamblee Tucker Road, Atlanta, GA 30341" and "Citgo Food Mart, Inc., Mumtaz Alli, 3625 Chamblee Tucker Road, Atlanta, GA 30341[.]" Given that the attorney only referred to Alli in relation to Citgo and that Citgo's business address is listed for Alli instead of her home address, it is unclear whether the attorney intended to list Alli as a respondent in her personal capacity or only as a corporate representative of Citgo.

Regardless, Alli was not named as a party to the arbitration action in her personal capacity. Instead, Citgo was named as the "Respondent" in the arbitration referral and arbitration demand, and all of the claims asserted by Ultra in the referral and demand are against the "Respondent[,]" *only*. Moreover, in the amended arbitration demand, Ultra specifically identified Alli as the "Representative/Attorney of the Party on whom Demand for Arbitration is made[,]" i.e., the Respondent, Citgo. And there is no evidence that Alli signed or verified any of the filings at issue or

_____

[19] OCGA § 15-1-2 (emphasis supplied).

13

otherwise acknowledged that the attorney who filed the documents was representing her in her personal capacity in the arbitration action.

In support of its argument, Ultra relies on *Ga. Pub. Defender Standards Council v. State of Ga.*,[20] in which this Court held that the Georgia Public Defender Standards Council ("Council") had consented to the trial court's exercise of jurisdiction over it by submitting a letter brief and order in response to a rule nisi issued by the trial court without contesting jurisdiction.[21] That case is clearly distinguishable from the instant case, however, because the action arose when two attorneys, *both of whom had been appointed by the Council to represent indigent defendants*, sought copies of the trial transcripts in the defendants' cases.[22] The transcripts were prepared, and the trial court's clerk billed the Council for the cost of the transcripts, *but the Council refused to pay*, contending that it was not responsible

---

[20] 284 Ga. App. 660 (644 SE2d 510) (2007).

[21] Id. at 663 (1). We note that, given this Court's ultimate ruling that the counties, not the Council, were responsible for the cost of the transcripts, id. at 664-665 (2), it was unnecessary for this Court to rule on the jurisdiction issue, as it was effectively rendered moot.

[22] Id. at 661-662. It was undisputed that the indigent defendants were entitled to transcripts of their trials at no cost to themselves. See id. at 662.

for paying for the transcripts.[23] In order to resolve the question of who was responsible for the cost of the transcripts, the trial court issued a rule nisi for a hearing and ordered that the rule nisi be served on various governmental entities, including the Council, directing the entities to show cause as to why they should not be held jointly or severally liable for the cost of the transcripts, as well as transcripts in subsequent criminal cases involving indigent defendants.[24] Thus, *the Council had effectively initiated the case* by refusing to pay for transcripts that had been ordered by attorneys *it had hired* to represent defendants *on its behalf*.

We conclude that, under the circumstances presented, the trial court did not err in rejecting the argument that Citgo and its attorney somehow consented to the arbitrator's exercise of personal jurisdiction over Alli, nor did it err in finding that Citgo's filing of unverified responsive pleadings mistakenly naming Alli as a "Respondent[ ]" did not waive Alli's claim of lack of personal jurisdiction, because

---

[23] Id. at 662.

[24] Id. at 661. It was in response to this rule nisi that the Council submitted its letter brief and proposed order.

15

each of these actions prejudiced Alli, a third party, by exposing her to personal liability for the arbitrator's award against Citgo.[25]

3. Ultra argues that, even though Alli was not named as a party to the arbitration action or served with the demand, Alli waived her personal jurisdiction defense by participating in the arbitration hearing without raising the issue. We disagree.

The undisputed evidence presented during the arbitration hearing shows that Alli's son created and owned the corporation (Citgo Food Mart, Inc.), that Alli was the corporation's secretary and a shareholder, and that the corporation was the location licensee for the COAMs. In addition, Citgo presented testimony by a store employee that Alli's name was not on any of the COAM licenses displayed in the store. The hearing transcript also shows that no one asserted, or asked Alli to confirm, that she was participating in the arbitration hearing in her personal capacity versus testifying solely as Citgo's corporate representative. This is especially significant given that, as shown above, Ultra had specifically amended its arbitration demand to list Alli as the "Representative/Attorney of the Party on whom Demand for Arbitration is made[.]"

_____

[25] See OCGA § 15-1-2.

16

Moreover, all of the cases upon which Ultra relies for this argument are clearly distinguishable, as each one involved a *named party* who had not been properly served, but who waived a personal jurisdiction defense by actively participating in the action. Consequently, Ultra has failed to cite to any authority that supports its argument that, under the circumstances presented, Alli waived her personal jurisdiction defense by testifying during the arbitration hearing. Thus, this argument presents no basis to reverse the trial court's order.

4. Ultra complains that the trial court erred in noting in its order that it (Ultra) had failed to call Citgo's former attorney (Mark Spix) to verify that he (Spix) had expressly waived Alli's personal jurisdiction defense by verbally admitting that Alli was a party to the arbitration proceedings. The court's statement, however, was in response to repeated, unsupported, and unsworn assertions made by Ultra's counsel (Oliver) during the January 2017 trial court hearing (prior to remand), and the trial court's July 2018 hearing (following remand), regarding off-the-record statements allegedly made by Spix to Oliver prior to the arbitration hearing. The transcript of the trial court's July 2018 hearing shows that Alli's counsel directly responded to Oliver's assertions, stating that he believed

17

Oliver may have been testifying up here. Obviously, . . . it's an interesting story about [Oliver] and [ ] Spix. It's very interesting that [ ] Spix was never called as a witness at the [January 2017] hearing so that he could explain what went on, and we don't have anything from him regarding [what he privately told Oliver]. Obviously, . . . the argument made by [ ] Oliver is just that, it's an argument. It's not evidence [and] doesn't prove anything.

Under these circumstances, the trial court did not err by pointing out that Ultra had failed to provide competent evidence to support Oliver's assertions.

5. In a related argument, Ultra contends that the trial court erred in ruling that it was Ultra's responsibility to call Spix as a witness to testify about his intent in filing the response and counterclaim in which he (Spix) listed Alli as a "Respondent[.]" This argument, however, materially misrepresents the court's order. In fact, immediately after the sentence Ultra quotes in its brief, the order stated: "However, [Spix's] reason for filing [the document] need not be known since it is clearly evident [that Ultra] never amended the Demand for Arbitration to add Alli as a respondent and that [Alli] was never served." In other words, the court ruled that, because Alli was never made a party to the arbitration proceedings, Spix's testimony regarding his intent in filing the documents was unnecessary and immaterial to the issue of Alli's personal jurisdiction defense. Thus, Ultra's argument lacks merit.

18

6. Finally, to the extent Ultra relies on a footnote in the arbitrator's order in which the arbitrator asserted that Alli was "subject to jurisdiction in this matter" based solely on his finding that she was a "licensee" under OCGA § 50-27-70 (b) (1), the arbitrator's statement was legally incorrect to the extent he was referring to the exercise of personal jurisdiction over Alli.

OCGA § 50-27-102 (d) (2) provides that

[t]he [GLC] shall have *jurisdiction of all disputes* between and among any licensees or former licensees whose licenses were issued pursuant to this article relating in any way to any agreement involving coin operated amusement machines, distribution of funds, tortious interference with contract, other claims against a subsequent master license holder or location owner, or any other claim involving coin operated amusement machines[.][26]

Thus, this statute provides that arbitrators, when acting on behalf of the GLC, had *subject matter jurisdiction over disputes* between licensees, not personal jurisdiction over the licensees, themselves, particularly when, as here, the licensee was not a party to the dispute.

---

[26] (Emphasis supplied.)

19

Moreover, under OCGA § 50-27-102 (d) (2), "the [GLC] shall refer any dispute *certified* by any master licensee against any other master licensee or any location owner or location operator or by any location owner or location operator against any master licensee to a hearing officer. . . . All disputes subject to the provisions of this Code section *certified* by a master licensee, location owner, or location operator shall be decided by a hearing officer approved or appointed by the [GLC]." As shown in the arbitration referral, however, the only "certified" dispute that Ultra asserted, and that the GLC referred to arbitration, was between Ultra and Citgo. Thus, there was no certified dispute between Alli and Ultra that the GLC had referred to arbitration under OCGA § 50-27-102 (d) (2), and over which the arbitrator had jurisdiction. Consequently, Ultra's reliance on the arbitrator's assertion of jurisdiction does not demonstrate reversible error or otherwise change the outcome of this appeal.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*