**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 1, 2023**

# In the Court of Appeals of Georgia

A23A0974. DOCS OF CT, LLC v. BIOTEK SERVICES, LLC.

WATKINS, Judge.

Docs of CT, LLC ("DCT") asks this Court to reverse the Superior Court of Fulton County's judgment which granted Biotek Services, LLC's petition to confirm an arbitration award and denied DCT's petition to vacate the award. The arbitration award was entered after an arbitrator found DCT in default as to liability and following a damages hearing at which DCT was not allowed to participate due to its lack of legal representation. Although the arbitration process here had numerous irregularities, we find that DCT has not established one of the narrow bases to vacate an arbitration award, and thus we affirm.

In Georgia,

[t]he function of the trial court in proceedings to confirm or vacate an arbitration award should be severely limited in order not to frustrate the purpose of avoiding litigation by resorting to arbitration. Consistent with this policy, OCGA § 9-9-13 (b) of the Georgia Arbitration Code sets forth five exclusive statutory grounds for vacating an arbitration award upon the application of a party subject to the award:

(1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of the Georgia Arbitration Code, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.[1]

Moreover, "[i]n reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous."[2]

---

[1] (Citation and punctuation omitted.) *Wells v. Wells-Wilson*, 360 Ga. App. 646, 647 (860 SE2d 185) (2021).

[2] (Citation and punctuation omitted.) Id; see also *Hilliard v. J.C. Bradford & Co.*, 229 Ga. App. 336, 341 (494 SE2d 38) (1997) ("It is the law in Georgia that a trial court's ruling confirming an arbitration award should not be disturbed unless it is clearly erroneous and not supported by any evidence in the record.").

2

With this standard in mind, the evidence shows that Biotek is a service provider who contracted with DCT to provide allergy testing services to DCT's patients. The parties disputed whether DCT was properly compensating Biotek pursuant to the agreement, and Biotek initiated arbitration. In the arbitration proceeding, Biotek served DCT with discovery requests, to which DCT largely objected. Biotek moved the arbitrator to compel more complete responses, which the arbitrator did. Following the entry of this order, DCT failed to supplement its discovery responses, so Biotek filed a motion for sanctions seeking to strike DCT's answer. The arbitrator entered another order instructing DCT to fully comply with the previous discovery order by a certain date or else DCT's answer would be stricken. Subsequently, the arbitrator found that DCT continued to violate the discovery order and he struck DCT's answer. The arbitrator found DCT in default as to liability and awarded damages as to most of Biotek's claims, but reserved ruling on the amount of damages for one claim so that those damages could be determined through an evidentiary hearing.

After the arbitrator entered this order, DCT filed a complaint against the arbitrator. The arbitrator withdrew so as to avoid an appearance of bias against DCT. With the case now stalled, Biotek filed a petition for confirmation in federal court. The federal court found that the order entered by the initial arbitrator was not final

because it left an issue of damages unresolved, so it refused to confirm the award. The federal court did, however, appoint a new arbitrator for the case.

Once the new arbitrator was in place, he upheld the initial arbitrator's finding of default as to liability against DCT, but vacated the damages award so that an evidentiary hearing could be held to establish damages. The new arbitrator entered a scheduling order containing deadlines for the parties to exchange hearing exhibits, witness lists, and pre-hearing briefs. DCT does not dispute that it did not submit any evidence, witnesses, or legal arguments before this deadline.

Shortly before the damages hearing was scheduled, counsel for DCT withdrew from representation. When DCT's withdrawing counsel asked the new arbitrator to send all correspondence to Dr. JD Sidana, a principal of DCT, the arbitrator responded that he would not communicate with the doctor because a non-lawyer cannot represent a corporation. Dr. Sidana subsequently emailed the new arbitrator trying to assert some defenses as to both liability and damages, but the new arbitrator responded that he would not consider any emails from Dr. Sidana.

In preparation for the hearing, the new arbitrator exchanged numerous emails with counsel for Biotek. In these emails, the new arbitrator asked Biotek's counsel to identify the most important exhibits to review in preparation and he requested and

4

received an Excel spreadsheet with damages calculations. Dr. Sidana was not copied on any of these communications. Prior to the hearing, although neither party requested a court reporter, the new arbitrator told the counsel for Biotek and DCT that he would record the Zoom damages hearing, but it is undisputed that there is no such recording.

Although there is no video recording or transcript of the damages hearing, it is undisputed that it was held and that Biotek was allowed to participate and that Dr. Sidana attended but was not allowed to participate on DCT's behalf. Following the hearing, the new arbitrator and counsel for Biotek exchanged numerous emails without copying Dr. Sidana. These emails included a request for clarification about the evidence presented, discussion about what damages to include in the award, a request for further legal support to justify awarding certain requested damages, and a request that counsel for Biotek check the new arbitrator's math in calculating damages. The new arbitrator issued an award which, while significant, did not include all types of damages requested by Biotek and which, as to the types of damages that were awarded, was lower than the amount requested by Biotek.

After this award issued, DCT retained counsel and filed a petition to vacate the award. Biotek answered the petition and counterclaimed to confirm the award.

5

Following a hearing at which both parties were represented by counsel, the superior court denied DCT's petition to vacate the award and granted Biotek's petition to confirm the award. DCT timely appealed from this order.

1. In two related claims of error, DCT argues that the arbitration award must be vacated because the new arbitrator violated the Georgia Arbitration Code when he imposed the sanction of default and when he refused to let DCT's principal participate in the damages hearing. We disagree.

Both of these claims concern limitations placed on DCT's ability to present its arguments in arbitration, and will be taken in turn.

*(a) Default Sanction*

"[T]he power of a court to vacate an arbitration award has been *severely limited* in order not to frustrate the legislative purpose of avoiding litigation by resort to arbitration."[3] As indicated above, among the limited bases for vacating an arbitration award is "[a] failure to follow the procedure of [the Georgia Arbitration Code], unless the party applying to vacate the award continued with the arbitration with notice of

---

[3] (Emphasis in original.) *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (499 SE2d 693) (1998).

6

this failure and without objection."[4] As is relevant here, the Georgia Arbitration Code provides that "[t]he parties are entitled to be heard; to present pleadings, documents, testimony, and other matters; and to cross-examine witnesses."[5] It further provides that this provision "may be waived by written consent of the parties."[6]

Here, the new arbitrator upheld most of the initial arbitrator's interim order, including the portion which found that, after reviewing DCT's discovery responses, DCT had "willfully violated the discovery process" and that, as a result, DCT's answer was stricken. This order prevented DCT from raising any defenses as to liability. DCT contends that the arbitration award must be vacated because finding it in default as to liability was a violation of its right pursuant to OCGA § 9-9-8 (b) to "be heard[,] to present pleadings, documents, testimony, and other matters[,] and to cross-examine witnesses." We disagree.

---

[4] OCGA § 9-9-13 (b) (4); see also *Southwire Co. v. American Arbitration Assn.*, 248 Ga. App. 226, 228 (2) (545 SE2d 681) (2001) ("OCGA § 9-9-13 (b) (4) mandates a vacation of the arbitration award if the arbitrators failed to follow the procedures of the [Georgia Arbitration Code] *absent a waiver by the complaining party*.") (emphasis supplied).

[5] OCGA § 9-9-8 (b).

[6] OCGA § 9-9-8 (f).

The Georgia Arbitration Code is clear that the parties can waive this right, as was done here. The parties agreed to utilize certain rules at the outset of the arbitration.[7] The rules provided for the exchange of documents and relevant information and further provided that

> [t]he arbitrator may order appropriate sanctions for failure of a party to comply with its obligation under any of these [arbitration rules]. These sanctions may include, but are not limited to, assessment of cost, exclusion of certain evidence, or in extreme cases determining an issue or issues submitted to arbitration adversely to the party that has failed to comply.

This Court has previously recognized the right of parties to waive a provision of OCGA § 9-9-8 such that vacatur was not required when the statute's requirements were not met.[8] Moreover, this is distinguishable from circumstances where we have

---

[7] Although the record does not contain an executed copy of an agreement to the arbitration provider's rules, DCT does not argue that the rules in the record do not apply or are not accurate.

[8] See *Doman v. Stapleton*, 272 Ga. App. 114, 118 (3) (611 SE2d 673) (2005) (refusing to vacate an arbitration award despite the arbitrator's denial of party's request for a stenographic record when such request was untimely made pursuant to the [arbitration] rules to which the party previously agreed to follow); see also *Brown v. Premiere Designs, Inc.*, 266 Ga. App. 432, 433-434 (597 SE2d 466) (2004) (finding no basis for vacatur due to the arbitrator's failure to record the hearing when both sides waived that requirement prior to the hearing); see also *Hilliard*, 229 Ga. App. at 342 (3) (finding no violation of the parties' right to present arguments even

vacated awards for violation of the Georgia Arbitration Code, because those instances involved rules for which the code does not provide for waiver by the parties.[9] Accordingly, the trial court did not clearly err in rejecting this claim.

*(b) Damages Hearing*

DCT also contends that the award must be vacated because the new arbitrator infringed on its right to "be heard[,] to present pleadings, documents, testimony, and other matters[,] and to cross-examine witnesses"[10] when he refused to permit Dr. Sidana to participate in the damages hearing on behalf of DCT. At the outset, it is worth noting that DCT would not have been able to introduce documentary evidence or testimony from witnesses because, even prior to the withdrawal of DCT's counsel, DCT failed to produce any evidence or witness lists prior to the deadline established

though arbitration hearing was adjourned before one party presented all of the evidence it wanted to because the rules agreed to by the parties provided that "the arbitrators may, in their discretion, adjourn any hearing.").

[9] *Atlanta Flooring Design Centers, Inc. v. R.G. Williams Constr., Inc.*, 333 Ga. App. 528, 529 (773 SE2d 868) (2015) (acknowledging prior case finding that parties could not contractually expand the scope of judicial review of an arbitration award and holding that parties also cannot contractually eliminate a party's right to move to vacate or modify an award in court); *Conmac Corp. v. Southern Diversified Dev., Inc.*, 245 Ga. App. 895, 899 (2) (539 SE2d 532) (2000) (arbitration award vacated because it had been improperly modified in violation of OCGA § 9-9-11).

[10] OCGA § 9-9-8 (b).

by the new arbitrator. The arbitration rules agreed to by the parties permitted the new arbitrator to set such a deadline and permitted the exclusion of evidence for the failure to abide by the arbitration rules. As such, even if the new arbitrator had permitted Dr. Sidana to represent DCT at the damages hearing, all Dr. Sidana could have done is cross examine any witnesses called by Biotek.

We need not reach the issue of whether the new arbitrator erred in prohibiting Dr. Sidana's participation in the hearing through the form of cross-examination because DCT has not articulated any prejudice it suffered as a result. The Georgia Arbitration Code is clear that an award shall be vacated "*if the court finds that the rights of that party were prejudiced by*" the arbitrator's failure to follow the code's procedures.[11] Dr. Sidana attended the damages hearing, and therefore arguably knows what transpired. Moreover, at this point DCT has received the damages evidence submitted by Biotek. Despite having this knowledge and information, DCT has not argued how its rights were prejudiced by the inability of Dr. Sidana, a lay person, to cross-examine any witness presented by Biotek. For instance, DCT has not argued

---

[11] (Emphasis supplied.) OCGA § 9-9-13 (b) (4); see also *Conmac Corp.*, 245 Ga. App. at 898 (1) (c) ("Conmac is correct in its assertion that a party who moves the trial court to vacate an arbitration award must show both (1) prejudice and (2) one of the four bases under OCGA § 9-9-13 (b).").

that Dr. Sidana would have been able to demonstrate through cross-examination that Biotek miscalculated damages, or inflated damages, or sought damages which were legally unavailable to it despite the default as to liability.[12] We need not decide whether DCT would be able to *prove* Dr. Sidana's cross-examination would have yielded a different result, because DCT has not even argued any potential difference. Accordingly, even if we were to decide that Dr. Sidana should have been permitted to cross-examine witnesses at the damages hearing,[13] DCT has not articulated any prejudice to its rights so as establish that the trial court clearly erred in confirming the award.[14]

2. DCT next argues that the trial court erred in failing to vacate the arbitration award due to extensive communications between the new arbitrator and counsel for Biotek which excluded DCT. We discern no clear error.

---

[12] It is worth noting that, even despite the absence of cross-examination, the new arbitrator did not award Biotek the full measure of damages it sought.

[13] To be clear, we need not and are not taking a position on whether a non-lawyer can represent a limited liability corporation in an arbitration proceeding.

[14] See *Faiyaz v. Dicus*, 245 Ga. App. 55, 58-59 (3) (537 SE2d 203) (2000) (holding that appellant could not merely allege bias by the arbitrator to justify vacatur without substantiating the claim with evidence).

11

The Georgia Arbitration Code provides that an arbitration award shall be vacated "if the court finds that the rights of that party were prejudiced by . . . [c]orruption, fraud, or misconduct in procuring the award" or "[p]artiality of an arbitrator appointed as a neutral[.]"[15]

> The party claiming partiality on the part of the arbitrator[ ] has the burden of proof in the confirmation proceedings. Further, arbitrators are not obliged to apply strict rules of law in the matter at hand, when they act within the scope of their authority, unless the parties require adherence to such rules. In fact, it is stated that they may disregard the traditional rules of law. Accordingly, as a general rule, arbitrators are free to apply broad principles of justice and good conscience and decide according to their concept or notion of justice. They are still obliged, however, to be guided by the basic agreement of the parties.[16]

Here, the new arbitrator engaged in multiple and substantive email discussions with counsel for Biotek which excluded DCT's representative. Not only does the law recognize the impropriety of ex parte conversations,[17] the arbitration agreement

---

[15] OCGA § 9-9-13 (b) (1)-(2).

[16] (Citations and punctuation omitted.) *Hilliard*, 229 Ga. App. at 340 (2).

[17] See *Arnau v. Arnau*, 207 Ga. App. 696-697 (1) (429 SE2d 116) (1993) (recognizing that the Uniform Superior Court Rules presume ex parte communications to be in error); see also *Costco Wholesale Corp. v. Intl. Brotherhood of Teamsters, Loc. No. 542*, 850 F. Appx. 467, 469-469 (9th Cir. 2021) (vacating

12

consented to by the parties forbade it as well.[18] These conversations should not have happened. Particularly egregious was the new arbitrator's request for and receipt of post-hearing legal analysis. Nevertheless, DCT has not established that the new arbitrator was partial or that its rights were prejudiced by the misconduct of the ex parte communications.

As to the arbitrator's partiality, the record supports the trial court's conclusion that the arbitrator's motive for engaging in these communications was his belief that he could not ethically communicate with Dr. Sidana as opposed to ill intent towards DCT or bias in favor of Biotek. Indeed, indicative of the arbitrator's lack of partiality or bias is the fact that he refused to award Biotek the portion of requested damages which he believed was legally unsupportable and he requested information about costs Biotek did not incur which he felt should be deducted from the damages award.

arbitration award following arbitrator's ex parte extension of a settlement offer to one of the parties and issuance of a "vague and bizarre" award); *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007) (" Because our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes.")

[18] The arbitration agreement provided that "[n]o party may have any *ex parte* communication with a neutral arbitrator regarding any issue related to the arbitration. Any necessary *ex parte* communication with a neutral arbitrator, whether before, during or after the hearing, shall be conducted through [the arbitration service provider]."

To the extent the ex parte communications were misconduct as defined by the Georgia Arbitration Code, DCT has not articulated how it was prejudiced thereby, which is a necessary showing for entitlement to vacatur. DCT has not argued that, in light of the default liability which we have already upheld, the arbitrator awarded improper damages due to the ex parte communications.[19] Although the new arbitrator solicited additional argument from Biotek about certain damages, he ultimately declined to award such damages despite Biotek's post-hearing brief arguing entitlement to them. Accordingly, while we do not condone these improper ex parte communications, because DCT has failed to articulate resulting prejudice, we conclude that the trial court did not clearly err in confirming the award on this basis.

3. Lastly, DCT argues that the arbitration award should be vacated because of the arbitrator's failure to properly maintain a record of the proceedings. Again, we discern no clear error.

---

[19] See, e. g., *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F2d 1019, 1025 (III) (B) (9th Cir. 1991) (finding arbitrator's ex parte communications improper, but confirming the award due to a lack of prejudice by the complaining party).

14

DCT contends that the new arbitrator violated OCGA § 9-9-8 (e) because he did not keep a proper record of the arbitration proceeding.[20] DCT is correct that the arbitrator agreed to record the Zoom damages hearing and failed to do so and that the record of the evidence and witnesses presented at the hearing does not appear to have been properly maintained. We strongly encourage arbitrators to take this obligation seriously both to safeguard the rights of arbitrating parties and to avoid unnecessary problems adjudicating what might otherwise be an enforceable award. That being said, pursuant to OCGA § 9-9-13, for such a violation to entitle DCT to vacatur of the award, DCT still must demonstrate it was prejudiced thereby. Despite Dr. Sidana's presence at the damages hearing, DCT fails to articulate how the incomplete record has prejudiced its ability to challenge the result of the arbitration. For instance, DCT makes no substantive attacks on the damages calculation which it would be able to establish but for the lack of a clean record. Accordingly, DCT has failed to demonstrate that the trial court clearly erred in confirming the award for this reason.

---

[20] OCGA § 9-9-8 (e) states that "[t]he arbitrators shall maintain a record of all pleadings, documents, testimony, and other matters introduced at the hearing. The arbitrators or any party to the proceeding may have the proceedings transcribed by a court reporter."

In conclusion, because DCT has failed to establish one of the narrow bases for vacatur of an arbitration award, we find that the trial court did not clearly err in confirming the award and in denying DCT's petition to vacate the award.

*Judgment affirmed. Barnes, P. J., concurs, and Land, J., dissents*.

A23A0974. DOCS OF CT, LLC v. BIOTEK SERVICES, LLC.


LAND, Judge.

Because the extensive, merits-based ex parte communications that occurred in this case constitute misconduct that is both improper and, by its very nature, prejudicial, I respectfully dissent. See e. g., *CostCo Wholesale Corp. v. Intl Brotherhood of Teamsters, Loc. No. 542*, 850 F. Appx. 467, 469-470 (9th Cir. 2021); *Totem Marine Tug & Barge, Inc. v. North American*, 607 F.2d 649, 653 (5th Cir. 1979). Compare *Global Gold Min. LLC v. Caldera Res., Inc.*, 941 F.Supp.2d 374 (S.D.N.Y. 2013).